```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| JEANNE PHILLIPS, Administratrix of the Estate of Mark Phillips, Deceased, | ) ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Civil Action No. 05-1502 ) |
| COUNTY OF ALLEGHENY, NORTHWEST REGIONAL COMMUNICATIONS, ALLEGHENY COUNTY 911, f/k/a NORTHWEST REGIONAL COMMUNICATIONS, DANIEL NUSSBAUM, DANIELLE TUSH, BRIAN CRAIG, LEONARD DEUTSCH, RYAN GING, SUSAN ZURCHER and PHILLIP CESTRA, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

MEMORANDUM

I

In this civil action, plaintiff, Jeanne Phillips, Administratrix of the Estate of Mark Phillips, deceased, seeks damages from defendants, County of Allegheny ("the County"), Northwest Regional Communications ("NRC"), Allegheny County 911 ("AC 911"), Daniel Nussbaum ("Nussbaum"), Danielle Tush ("Tush"), Brian Craig ("Craig"), Leonard Deutsch ("Deutsch"), Ryan Ging ("Ging"), Susan Zurcher ("Zurcher") and Phillip Cestra ("Cestra"), under 42 U.S.C. § 1983 for alleged violations of Mark Phillips' constitutional rights. In addition, plaintiff seeks damages from NRC and the individual defendants under Pennsylvania's wrongful death and survival statutes, 42 Pa.C.S.A. §§ 8301 and 8302, respectively.

Presently before the Court are the motions of NRC and the individual defendants to dismiss plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for a more definite statement under Fed.R.Civ.P. 12(e). For the reasons set forth below, the motions to dismiss plaintiff's Section 1983 claims will be granted for failure to state claims upon which relief may be granted. As to the remaining state law claims for wrongful death and survival, the Court declines to exercise supplemental jurisdiction over such claims under 28 U.S.C. § 1367(c)(3), and the claims will be transferred to state court pursuant to 42 Pa.C.S.A. § 5103.[1]

II

In summary, plaintiff's complaint alleges the following facts:

Plaintiff is the biological mother and surviving parent of the decedent, Mark Phillips. The County is a political

---

[1] On January 5, 2006, after the individual defendants filed their motion to dismiss, the County filed a Motion for Stay of Time to File Responsive Pleading, asserting that plaintiff does not have a viable Section 1983 claim against the County if the individual defendants' motion to dismiss the Section 1983 claim against them is granted. (Doc. No. 22). Plaintiff did not oppose the County's motion, and, on January 6, 2006, the Court granted the motion to stay. (Doc. No. 23). In light of the Court's conclusion that NRC and the individual defendants are entitled to the dismissal of plaintiff's Section 1983 claims for failure to state claims upon which relief may be granted, the Order accompanying this Memorandum Opinion will lift the stay granted to the County and enter judgment in favor of all defendants and against plaintiff on the Section 1983 claims.

subdivision of the Commonwealth of Pennsylvania.  NRC is a corporation which was established to operate an emergency 911 call center ("the 911 Call Center") for the benefit of the County's residents.  AC 911, formerly known as NRC, is a political subdivision of the Commonwealth of Pennsylvania.  At all relevant times, Nussbaum was the Communications Director of the 911 Call Center, and Tush, Craig, Deutsch, Ging, Zurcher and Cestra were dispatchers for the 911 Call Center.

On October 12, 2003, Michael Michalski ("Michalski"), who was employed by the 911 Call Center as a dispatcher, used his position to surreptitiously gain access to unauthorized information.  Specifically, Michalski ran multiple searches of the 911 Call Center's computer network and databases in an attempt to locate the whereabouts of his former girlfriend, Gretchen Ferderbar, and her current boyfriend, Mark Phillips.  By October 19, 2003, Nussbaum, who was Michalski's supervisor, became aware of Michalski's actions and placed Michalski on a deferred, one-week suspension to take effect on October 27, 2003.  On October 26, 2003, the day before the suspension was to take effect, Michalski again utilized the 911 Call Center's computer network and databases to gain unauthorized access to personal information regarding Mark Phillips.  Specifically, Michalski accessed information regarding Mark Phillips' motor vehicle and

license plate registrations in an effort to track and locate Mark Phillips' whereabouts.

During the evening hours of October 28, 2003 and the early morning hours of October 29, 2003, while on suspension, Michalski made numerous telephone calls to the 911 Call Center and spoke with Tush and Craig. During those telephone calls, Michalski requested information that would assist him in locating Mark Phillips. Tush and Craig assisted Michalski with the knowledge that they were accessing unauthorized personal information having absolutely no relationship to their jobs as dispatchers for the 911 Call Center.

At all relevant times, the defendants were aware that the relationship between Michalski and Gretchen Ferderbar had recently ended; that Michalski was distraught over this fact; and that Michalski's distress was the reason he accessed the unauthorized information which resulted in his suspension. The defendants also knew, or should have known, that the target of Michalski's inquiry, Mark Phillips, was the present boyfriend of Gretchen Ferderbar, and that the only reasonable, foreseeable consequence of Michalski's actions in accessing unauthorized information concerning Mark Phillips was to subject Mark Phillips to harm.

On the morning of October 29, 2003, Gretchen Ferderbar contacted Nussbaum to inform Nussbaum that Michalski had accessed

the 911 Call Center's computer system in his position as a dispatcher to obtain information which enabled him to track and locate her and Mark Phillips at Mark Phillips' residence. After confirming the fact that Michalski had improperly accessed information regarding Mark Phillips, Nussbaum met with Michalski at the 911 Call Center and confronted him about his repeated, unauthorized use of the 911 Call Center's computer system. Michalski admitted to Nussbaum that he had used the 911 Call Center's computer system to gain access to unauthorized information regarding Mark Phillips, and Nussbaum terminated Michalski's employment with the 911 Call Center.

Recognizing Michalski's volatile appearance and concerned that Michalski may commit a violent act, Nussbaum placed two telephone calls. Nussbaum either left a voicemail message on Gretchen Ferderbar's cellular telephone warning her to be careful and watch out for Michalski or he warned her directly. Nussbaum also contacted the McCandless Township Police Department to notify them of Michalski's propensity. Despite recognizing that Michalski had used the 911 Call Center's computer system to track Mark Phillips, who was the current boyfriend of Gretchen Ferderbar, Nussbaum made no effort to detain Michalski, to deter him from reaching Mark Phillips or to warn Mark Phillips. In addition, Nussbaum made no effort to contact the police departments of the Township of Shaler and the Borough of Carnegie

where the residences of Gretchen Ferderbar and Mark Phillips, respectively, were located.

On the afternoon of October 29, 2003, Michalski contacted dispatchers at the 911 Call Center, including Tush, Craig, Deutsch, Ging, Zurcher and Cestra, to explain the circumstances of his termination, indicating that he had nothing left to live for and that Gretchen Ferderbar and Mark Phillips were going to pay for putting him in his present situation. Despite this contact by Michalski, none of the dispatchers made an effort to contact Gretchen Ferderbar or Mark Phillips or the police departments of the Township of Shaler or the Borough of Carnegie. Later that afternoon, Michalski shot and killed Mark Phillips with a handgun.

### III

A motion to dismiss for failure to state a claim tests the sufficiency of a complaint. Powell v. Ridge, 189 F.3d 387, 394 (3d Cir.1999). In deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true the facts pleaded in the complaint and any reasonable inferences derived from those facts. Langford v. City of Atlantic City, 235 F.3d 845, 847 (3d Cir. 2000). In addition, the court is to construe the complaint in the light most favorable to the plaintiff. Weston v. Pennsylvania, 251 F.3d 420, 425 (3d Cir.2001). However, the court is not required to accept as true legal conclusions or

unwarranted factual inferences. <u>Schuylkill Energy Res., Inc. v. Pennsylvania Power & Light Co.</u>, 113 F.3d 405, 417 (3d Cir.1997).

IV

In Counts One and Two of the complaint, plaintiff asserts Section 1983 claims against defendants, alleging that defendants' actions violated Mark Phillips' rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment and resulted in a seizure of Mark Phillips in violation of the Fourth Amendment.[2] The Court will address the constitutional rights supporting plaintiff's Section 1983 claims *seriatim*.[3]

<u>Fourth Amendment</u>

"A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority, ... in some way restrained the liberty of a citizen.'" <u>Graham v. Connor</u>, 490 U.S. 386, 395 n.10 (1989), *citing*, <u>Terry v. Ohio</u>, 392 U.S. 1, 19 n.16 (1968) and <u>Brower v. County of Inyo</u>, 489 U.S. 593, 596 (1989). The Fourth Amendment is not applicable in "those instances in which a free

---

[2] Count One asserts a Section 1983 claim against the County, NRC and AC 911, and Count Two asserts a Section 1983 claim against the individual defendants.

[3] For purposes of their motions to dismiss, NRC and the individual defendants assume, as they must, the truth of plaintiff's allegation that they were state actors acting under color of state law at the time of the events alleged in the complaint. They do not, however, admit this fact. (Doc. No. 5, p. 7, Doc. No. 26, p. 7).

7

citizen is denied his or her constitutional right to life through means other than a law enforcement official's arrest, investigatory stop or other seizure." County of Sacramento v. Lewis, 523 U.S. 833, 844-45 (1998), *quoting with approval*, Pleasant v. Zamieski, 895 F.2d 272, 276 n.2 (6th Cir.), *cert. denied*, 498 U.S. 851 (1990).

In the complaint, plaintiff alleges that defendants' actions "resulted in the seizure of [Mark] Phillips' person and life in derogation of the Fourth Amendment of the United States Constitution." (Doc. No. 1, ¶¶ 46 and 55).[4] NRC and the individual defendants contend that plaintiff has failed to state a constitutionally cognizable Fourth Amendment claim because no police action was involved in the seizure of Mark Phillips. (Doc. No. 34, p. 4). After consideration, the Court agrees.[5]

"A Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of

---

[4] In paragraphs 51 and 59 of the complaint, plaintiff further alleges that "[a]s a direct and proximate result of the willful disregard, intentional, grossly reckless and deliberately indifferent actions and/or failure to act of the Defendants, Phillips was unreasonably seized in violation of Phillips' rights under the Fourth Amendment of the United States Constitution."

[5] In the briefs filed in opposition to the present motions to dismiss, plaintiff does not address this argument. Rather, plaintiff argues, unpersuasively, that for purposes of his Fourth Amendment claim, it is sufficient that defendants "**intentionally** gave Michalski access to personal information of Phillips and in doing so succeeded in hindering the liberty of Phillips." (Emphasis in originals). (Doc. No. 21, p. 9, Doc. No. 35, p. 9).

movement ..., nor even whenever there is a governmentally *desired* termination of an individual's freedom of movement ..., but only when there is a governmental termination of freedom of movement *through means intentionally applied*." Brower v. County of Inyo, 489 U.S. 593, 597 (1989). According to the allegations of plaintiff's complaint, the only person responsible for seizing Mark Phillips on October 29, 2003 "through means intentionally applied" was Michalski. Thus, defendants cannot be liable under Section 1983 for a violation of Mark Phillips' Fourth Amendment rights.

Moreover, as noted above, a seizure subject to the protections of the Fourth Amendment must be carried out by a government actor. Plaintiff's complaint alleges that Michalski was no longer employed by the 911 Call Center at the time he shot Mark Phillips on October 29, 2003. Under the circumstances, Mark Phillips' seizure by Michalski is not subject to the protections of the Fourth Amendment.

Equal Protection

To state a claim under Section 1983 for a denial of equal protection, a plaintiff must allege that he or she "received different treatment from that received by other individuals similarly situated." Keenan v. City of Philadelphia, 983 F.2d 459, 465 (3d Cir.1992). With respect to plaintiff's equal protection claim, the complaint alleges that defendants' actions

"were intentional and/or constituted willful disregard, gross recklessness and deliberate indifference for [Mark] Phillips' personal safety, well-being and right to life in derogation of the ... Equal Protection clause ... of the Fourteenth Amendment of the United States Constitution."  (Doc. No. 1, ¶¶ 45 and 54).[6] NRC and the individual defendants assert that plaintiff has failed to state a constitutionally cognizable equal protection claim under the Fourteenth Amendment because the complaint fails to allege that they intentionally treated Mark Phillips differently from other similarly situated persons.  Again, after consideration, the Court agrees.

In <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562 (2000), a homeowner asked the Village of Willowbrook to connect her property to the municipal water supply.  Initially, the Village conditioned the connection on the homeowner's agreement to grant the Village a 33-foot easement.  The homeowner objected, claiming that the Village only required a 15-foot easement from other property owners seeking access to the water supply.  After a 3-month delay, the Village relented and agreed to provide water service to the homeowner with only a 15-foot easement.

---

[6] In paragraphs 50 and 58 of the complaint, plaintiff further alleges that "[a]s a direct and proximate result of willful disregard, intentional, grossly reckless and deliberately indifferent actions and/or failure to act of the Defendants, Phillips was deprived of his right to life and liberty ... in violation of his Equal Protection rights as guaranteed by the Fourteenth Amendment of the United States Constitution."

Subsequently, the homeowner sued the Village, alleging that the Village's demand for a 33-foot easement to connect her property to the municipal water supply violated the Equal Protection Clause of the Fourteenth Amendment.  The district court dismissed the homeowner's action for failure to state a cognizable claim under the Equal Protection Clause.  On appeal, the United States Court of Appeals for the Seventh Circuit reversed, holding that a plaintiff can allege an equal protection violation by asserting that the state action was motivated solely by a "'spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective.'" 160 F.3d 386, 387 (7th Cir.1998), *quoting*, Esmail v. Macrane, 53 F.3d 176, 180 (7th Cir.1995).  The Supreme Court granted certiorari to determine whether the Equal Protection Clause gives rise to a cause of action on behalf of a "class of one" where the plaintiff did not allege membership in a class or group.  In affirming the Seventh Circuit's decision, the Supreme Court stated in relevant part:

\* \* \*

> Our cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.  See Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 43 S.Ct. 190, 67 L.Ed. 340 (1923); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty., 488 U.S. 336, 109 S.Ct. 633, 102 L.Ed.2d 688 (1989).  In so doing, we have explained that "'[t]he purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary

discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.'" Sioux City Bridge Co., supra, at 445, 43 S.Ct. 190 (quoting Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 352, 38 S.Ct. 495, 62 L.Ed. 1154 (1918).

That reasoning is applicable to this case. Olech's complaint can fairly be construed as alleging that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners. See Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The complaint also alleged that the Village's demand was "irrational and wholly arbitrary" and that the Village ultimately connected her property after receiving a clearly adequate 15-foot easement. These allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. We therefore affirm the judgment of the Court of Appeals, but do not reach the alternative theory of "subjective ill will" relied on by that court.

\* \* \*

528 U.S. at 564-65.

Relying on Village of Willowbrook v. Olech, supra, plaintiff argues that the complaint in this case "sets forth a cause of action under the Equal Protection Clause 'class of one' jurisprudence." (Doc. No. 21, p. 7). Plaintiff further argues:

..., it is obvious that Plaintiff has sufficiently alleged an Equal Protection claim. Plaintiff's Complaint alleges that although other persons similarly situated had personal information accessed only for legitimate 9-1-1 purposes, [Mark] Phillips was discriminated against by the Individual Defendants in that they accessed his personal information to assist Michalski in his attempt to track and eventually kill him. There is no question that the employees intentionally furnished information to Michalski which was wholly unrelated to any legitimate state objective. It is **not** necessary, under the Supreme Court's holding in Olech, for Plaintiff to allege that the

12

> Individual Defendants did so with malice or ill will or that they knew, for a certainty, that Michalski would use the information to kill Plaintiff's decedent. (Emphasis in original).

(Doc. No. 21, p. 8).

First, with respect to the argument that the individual defendants discriminated against Mark Phillips by accessing his personal information to assist Michalski in locating him, the Court notes that the only individual defendants who are alleged in the complaint to have accessed Mark Phillips' personal information through the 911 Call Center without authorization to do so are Tush and Craig. None of the other individual defendants are alleged to have engaged in such conduct.

Second, despite plaintiff's argument that the complaint "alleges that although other persons similarly situated had personal information accessed only for legitimate 9-1-1 purposes, [Mark] Phillips was discriminated against by the Individual Defendants in that they accessed his personal information to assist Michalski in his attempt to track and eventually kill him," a review of the complaint reveals no such allegation. In fact, the complaint alleges that "[a]t the time Nussbaum suspended Michalski, Michalski informed Nussbaum that other dispatchers were also engaging in the widespread practice of the unauthorized access of people's personal information using the 911 Call Center's computer networks and databases." (Doc. No. 1, p. 4, ¶ 20). This allegation directly contradicts plaintiff's

13

argument that Mark Phillips was treated differently than other similarly situated persons and precludes the claim that Mark Phillips was subjected to intentional discrimination, which is necessary to state a Section 1983 claim based on a denial of equal protection.

Substantive Due Process

The essential elements of a meritorious "state-created danger" claim under the Due Process Clause are: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and (4) the state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir.2006). NRC and the individual defendants maintain that the allegations in the complaint do not set forth a substantive

due process claim based on the state-created danger theory as a matter of law. Again, after consideration, the Court agrees.[7]

First, the Court concludes that the harm ultimately caused by Michalski - the murder of Mark Phillips - was not foreseeable. There are no allegations in the complaint that Michalski had a history of violence or, if he did, that any of the defendants were aware of such history. Second, the Court concludes as a matter of law that the alleged conduct of Tush and Craig in providing Michalski with unauthorized personal information concerning Mark Phillips from the 911 Call Center's network and databases does not rise to the required level of shocking the conscience. No reasonable dispatcher in the position of these

---

[7] As noted previously, the only individual defendants who are alleged in the complaint to have accessed Mark Phillips' personal information for Michalski through the 911 Call Center without authorization to do so are Tush and Craig. Thus, they are the only defendants who potentially could be liable to plaintiff for a violation of Mark Phillips' right to substantive due process based on the state-created danger theory. Plaintiff also appears to state substantive due process claims against defendants based on their failure to protect Mark Phillips from Michalski and/or their failure to warn Mark Phillips of the danger posed by Michalski. (Doc. No. 1, ¶¶ 37-39, 41, 45, 50, 54 and 58). NRC and the individual defendants have moved to dismiss any such substantive due process claims under Fed.R.Civ.P. 12(b)(6), based on <u>DeShaney v. Winnebago County Dept. of Social Services</u>, 489 U.S. 189 (1989), in which the Supreme Court held that nothing in the language of the Due Process Clause requires a State to protect the life, liberty and property of its citizens against invasion by private actors. Plaintiff did not respond to this aspect of the motions to dismiss. Therefore, the motions of NRC and the individual defendants to dismiss any substantive due process claims based on defendants' failure to protect and/or warn Mark Phillips will be granted.

15

dispatchers would have understood his or her conduct to be conscience-shocking. *Cf.* Estate of Smith v. Marasco, 430 F.3d 140, 154 (3d Cir.2005). Third, the complaint fails adequately to allege that the conduct of Tush and Craig rendered Mark Phillips more vulnerable to danger. Specifically, as noted repeatedly by NRC and the individual defendants in their motions to dismiss, the complaint fails to allege where the shooting of Mark Phillips occurred. If the shooting did not occur at his residence (where plaintiff also resides), the unauthorized personal information concerning Mark Phillips that is alleged to have been provided to Michalski by Tush and Craig did not render Mark Phillips more vulnerable to danger.[8]

V

Counts Three and Four of plaintiff's complaint, asserting claims against NRC and the individual defendants under Pennsylvania law for wrongful death and survival, respectively, were brought pursuant to the Court's supplemental jurisdiction,

---

[8] In light of the Court's conclusions that the allegations of plaintiff's complaint (a) establish that Mark Phillips' seizure was not subject to the protections of the Fourth Amendment, (b) preclude a claim that Mark Phillips was the subject of intentional discrimination which is necessary to state an equal protection claim under the Fourteenth Amendment, and (c) do not rise, as a matter of law, to the level of conscience-shocking required to state a substantive due process claim based on the state-created danger theory, there is no basis for denying the motions to dismiss without prejudice and giving plaintiff an opportunity to amend the complaint. Accordingly, plaintiff's Section 1983 claims will be dismissed with prejudice.

16

under 28 U.S.C. § 1367(a), over claims "that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Subsection (c)(3) of Section 1367 permits a district court to decline to exercise supplemental jurisdiction over a claim or claims if "the district court has dismissed all claims over which it has original jurisdiction," and, after consideration, the Court will do so in this case. However, pursuant to 42 Pa.C.S.A. § 5103, the Court will transfer plaintiff's wrongful death and survival claims to state court where NRC and the individual defendants may pursue, in an appropriate motion, the arguments raised in support of the dismissal of such claims for failure to state a claim under Fed.R.Civ.P. 12(b)(6).[9]

An order follows.

_____
Arthur J. Schwab
United States District Judge
for
William L. Standish
United States District Judge

Date: May 15, 2006

---

[9] NRC and the individual defendants assert that the state law claims in plaintiff's complaint are barred by the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §§ 8541 *et seq.*, and/or the six-month statute of limitations set forth in 42 Pa.C.S.A. § 5522(b)(1), which relates to an action against any officer of any government unit for anything done in the execution of his office.
17