IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JEANNE PHILLIPS, Administratrix of the Estate of Mark Phillips, Deceased, | ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| vs. | ) Civil Action No. 05-1502 |
| | ) |
| COUNTY OF ALLEGHENY, NORTHWEST REGIONAL COMMUNICATIONS, ALLEGHENY COUNTY 9-1-1, f/k/a NORTHWEST REGIONAL COMMUNICATIONS, DANIEL NUSSBAUM, DANIELLE TUSH, and BRIAN CRAIG, | ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

## **MEMORANDUM**

Pending before the Court is a Motion to Dismiss in Part the Amended Complaint (Docket No. 55), filed by Defendants Northwest Regional Communications, Daniel Nussbaum ("Nussbaum"), Danielle Tush ("Tush"), and Brian Craig ("Craig.") For the reasons discussed below, the Motion is granted in part and denied in part.

## **I.   BACKGROUND**

### A.   Factual History[1]

The facts of this case will not be reiterated in detail because they are well-explained in the opinion of the United States Court of Appeals for the Third Circuit in Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008). Succinctly stated, Plaintiff Jeanne Phillips claims that in October 2003, as the

---

[1]   Unless otherwise noted, the facts in this section are taken from Plaintiff's Amended Complaint, Docket No. 48.

result of the unauthorized use of the computer system and databases of Northwest Regional Communications ("Northwest"), a corporation established to operate an emergency 911 call center ("the Call Center") in Allegheny County, a disgruntled former employee of the Call Center named Michael Michalski ("Michalski") was able to track down and kill her son, Mark Phillips ("Phillips.") Even after Michalski had been put on a one-week suspension when his supervisor, Nussbaum, learned he was attempting to use the Call Center databases to locate Phillips and Michalski's former girlfriend, Gretchen Ferderbar ("Ferderbar"), two other Call Center employees, Tush and Craig, continued to provide confidential information to Michalski.

On the morning of October 29, 2003, Ferderbar contacted Nussbaum and told him Michalski had obtained information from the Call Center computers which allowed him to locate her and Phillips at Phillips's home. During a conversation later that day between Nussbaum and Michalski, Michalski admitted he had made repeated unauthorized use of the database and Nussbaum fired him. Nussbaum then called Ferderbar and the McCandless Township Police Department,[2] alerting them to Michalski's "volatile appearance" and the possibility that he would commit some violent act. Nussbaum did not, however, call the police in the municipalities where

---

[2] According to Plaintiff's brief in opposition to the motion to dismiss, the Northwest Call Center was located in McCandless Township at the time.

2

Ferderbar or Phillips lived nor attempt to reach Phillips directly.

The same afternoon, Michalski called Tush and Craig, as well as several other dispatchers at the Call Center, and told them he had been fired, he "had nothing left to live for," and "Ferderbar and Phillips were going to pay for putting him in his present situation." (Amended Complaint, Docket No. 48, "Am. Compl.," ¶ 36.) Michalski shot and killed Mark Phillips on the afternoon of October 29, 2003.

## B.    Procedural History

On October 27, 2005, Jeanne Phillips ("Plaintiff"), Phillips's biological mother and administratrix of his estate, brought suit in this Court against Allegheny County, Allegheny County 911, Northwest, Nussbaum, Tush, Craig, and four other Call Center dispatchers, Leonard Deutsch, Ryan Ging, Susan Zurcher, and Phillip Cestra.[3]    In a four count Complaint, Plaintiff first alleged that the actions of Allegheny County, Allegheny 911 and Northwest, individually and jointly, had resulted in a state-created danger where it was foreseeable that Phillips would suffer injury and harm.    This state-created danger had, in fact, deprived Phillips of his right to life and liberty without due process and in violation of his equal protection rights guaranteed by the Fourteenth Amendment to the United States Constitution and had

---

[3]    Collectively, Nussbaum, Tush, Craig, Deutsch, Ging, Zurcher, and Cestra will be referred to as the "Individual Defendants."

3

resulted in Phillips's unreasonable seizure in violation of his constitutional rights under the Fourth Amendment. Plaintiff sought monetary damages, including punitive damages, attorneys' fees, and costs pursuant to 42 U.S.C. §§ 1983 and 1988.[4] (Complaint, Docket No. 1, ¶¶ 43-51.)

In Count II, again brought pursuant to Section 1983, the same allegations were made against the Individual Defendants, all in their individual capacities.[5] (Complaint, ¶¶ 52-59.) In Counts III and IV, respectively, Plaintiff brought state-law claims for wrongful death under 42 Pa.C.S. § 8301, and for damages recoverable by a survivor under 42 Pa. C.S.A. § 8302, against Northwest and the Individual Defendants. (Complaint, ¶¶ 60-64 and 65-67.)

The Individual Defendants promptly filed a motion to dismiss or, in the alternative, a motion for a more definite statement (Docket No. 4), arguing that the Section 1983 claims should be dismissed with prejudice either because (1) the Complaint failed to

---

[4] Enacted as part of the Civil Rights Act of 1871, 42 U.S.C. § 1983 establishes a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights. To establish a prima facie case under § 1983, a plaintiff must show that: (1) a person deprived him of a federal right; and (2) the person who deprived him of that right acted under state or territorial law. Burella v. City of Philadelphia, 501 F.3d 134, 139 (3d Cir. 2007) (internal citations and quotations omitted.) 42 U.S.C. § 1988 sets forth the damages which may be awarded by the court to a prevailing party in a civil suit brought under § 1983.

[5] In both the initial and the Amended Complaint, Plaintiff has alleged that the Individual Defendants were state-actors and Defendants have not disputed this allegation. As did the Court of Appeals (Phillips, 515 F.3d at 235, n.4), we accept that allegation for purposes of discussion.

4

state a cognizable claim against any of them; or (2) the Individual Defendants were entitled to federal qualified immunity with regard to those claims. In addition, they argued, the wrongful death and survivor action counts should be dismissed because such claims were barred by the Pennsylvania Political Subdivision Tort Claims Act (42 Pa.C.S. § 8541 *et seq.*) or by the six-month statute of limitations in 42 Pa.C.S. § 5522(b)(1). On January 30, 2006, Northwest filed its own motion to dismiss (Docket No. 28), raising essentially the same arguments.[6]

On May 15, 2006, this Court entered a memorandum opinion and order, lifting the stay imposed at the request of Allegheny County, dismissing with prejudice the Section 1983 claims against all the Individual Defendants and Northwest, and entering judgment in favor of all Defendants on the constitutional claims. The Court declined to exercise supplemental jurisdiction over the remaining state law claims and directed the Clerk of Court to transfer those claims to the Court of Common Pleas of Allegheny County. *See* Phillips v. County of Allegheny, CA No. 05-1502, 2006 U.S. Dist. LEXIS 29399 (W.D. Pa., May 15, 2006). Plaintiff immediately appealed.

The Court of Appeals handed down its decision on February 6,

---

[6] Allegheny County did not file a motion to dismiss but instead filed a motion to stay the time in which it was required to file a responsive pleading (Docket No. 22), reasoning that since the Individual Defendants, at all relevant times, were employees of Northwest rather than the County or Allegheny 911, if their motion to dismiss were successful, there would be no basis for continuing to pursue the claims against the County. Plaintiff did not object to the County's motion to stay and it was granted on January 6, 2006.

5

2008, affirming dismissal of the state-created danger claims against Defendants Deutsch, Ging, Zurcher, Cestra, and Northwest; reversing dismissal of the state-created danger claims against Tush and Craig; and remanding to allow Plaintiff to amend her state-created danger claims against Nussbaum and her equal protection claims against all remaining Defendants.  Plaintiff filed an Amended Complaint on April 17, 2008, as directed by the Court on remand.  Defendants Northwest, Tush, Craig and Nussbaum filed a motion to dismiss some of the claims against them on May 1, 2008.[7] Defendants Allegheny County and Allegheny County 911 have filed an Answer to the Amended Complaint (Docket No. 59) and do not join in the motion to dismiss.

## II.  JURISDICTION AND VENUE

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiff's claims brought under 42 U.S.C. § 1983 and over her pendent state law claims pursuant to 28 U.S.C. § 1367.  Venue is appropriate in this district inasmuch as the events which are alleged to have injured Plaintiff occurred in this district.  28 U.S.C. § 1391(b)(2).

## III.  STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant moves to dismiss a complaint

---

[7] In Counts III and IV of the Amended Complaint, Plaintiff reiterated her wrongful death and survivor claims.  Inasmuch as Defendants Northwest, Tush, Craig and Nussbaum do not move to dismiss those Counts, nor the equal protection claims brought in Counts I and II, none of those allegations will be addressed herein.

for "failure to state a claim upon which relief can be granted."
Fed.R.Civ.P. 12(b)(6). In Phillips, the Court of Appeals addressed
in detail the modifications to the standard of review for such
motions explained by the Supreme Court in its ruling in Bell
Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S.Ct. 1955, 167
L.Ed.2d 929 (2007). See Phillips, 515 F.3d at 230-235.

In an opinion handed down by the Court of Appeals in April of
this year, the Court summarized its current application of Twombly
and Phillips. See Wilkerson v. New Media Tech. Charter Sch., Inc.,
522 F.3d 315 (3d Cir. 2008). The Court noted that when it had
decided Phillips,

> [a]lthough the exact parameters of the Twombly decision
> were not yet known, we read Twombly to mean that "factual
> allegations must be enough to raise a right to relief
> above the speculative level. In other words, "stating.
> . .a claim requires a complaint with enough factual
> matter (taken as true) to suggest" the required element.

Wilkerson, 522 F.3d 322, citing Phillips, 515 F.3d at 234, quoting
Twombly, 127 S.Ct. at 1965.

"After Twombly, it is no longer sufficient to allege mere
elements of a cause of action; instead, 'a complaint must allege
facts suggestive of [the proscribed] conduct.'" Phillips, 515 F.3d
at 233, quoting Twombly, 127 S.Ct. at 1969 n. 8. "This 'does not
impose a probability requirement at the pleading stage,' but
instead 'simply calls for enough facts to raise a reasonable
expectation that discovery will reveal evidence of' the necessary
element." Id. at 234, quoting Twombly, 127 S.Ct. at 1965.

7

However, nothing in Phillips or Twombly has changed other pleading standards for a Rule 12(b)(6) motion to dismiss. That is, Phillips noted the Supreme Court in Twombly did not impose a new heightened pleading requirement, but reaffirmed that Federal Rule of Civil Procedure 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, not "detailed factual allegations." *See* Phillips, 515 F.3d at 231, *citing* Twombly, 127 S.Ct. at 1964. Second, the Supreme Court did not abolish the Rule 12(b)(6) requirement that "the facts alleged must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." Phillips, id., *citing* Twombly, id. at 1964-65 and 1969 n.8. Phillips also noted that while the Supreme Court did not address the previously established rule about drawing all reasonable inferences in favor of the plaintiff when considering a motion to dismiss, it concluded "we do not read [the Twombly] decision to undermine that principle." Id. at 231.

## IV. **LEGAL ANALYSIS**

Defendants raise four arguments in support of their motion to dismiss. (*See* Brief in Support of Motion to Dismiss, Docket No. 56, "Defs.' Brief.") We consider each in turn, beginning with the second argument.

8

A. The State-Created Danger Claims in Count I Must
Be Dismissed Insofar as They Apply to Northwest

We may dispose of Defendants' second argument in only a
few words. In Count I of the Amended Complaint, Plaintiff re-
asserts her allegations that the actions of Allegheny County,
Allegheny 911 and Northwest, individually and/or jointly, resulted
in a state-created danger in which it was foreseeable that Phillips
would suffer injury and harm and that those actions "were
intentional and/or constituted willful disregard, gross
recklessness and deliberate indifference for Phillips's personal
safety, well-being and right to life in derogation of the Due
Process and Equal Protection clauses of the Fourteenth Amendment of
the United States Constitution." (Am. Compl., ¶¶ 40-41.)
Defendants argue that the state-created danger claim against
Northwest must be dismissed because this Court's decision that
Plaintiff had failed as a matter of law to state a claim was
expressly affirmed by the Court of Appeals. (Defs.' Brief at 3;
see also Phillips, 2006 U.S. Dist. LEXIS 29399 at *19, n.7, and
Phillips, 515 F.3d at 246, affirming dismissal of the state-created
danger claims against "the remaining defendants.") Plaintiff
concedes this point. (Brief in Opposition to Motion. . .for
Partial Dismissal of the Amended Complaint, Docket No. 60, "Plf.'s
Brief," at 16, n.1.) To the extent, therefore, that Count I
asserts a state-created danger claim against Northwest, those
allegations are dismissed with prejudice.

9

B.   Plaintiff's Fourth Amendment Claims
     in Counts I and II Must be Dismissed

Defendants argue that the Fourth Amendment claims were

dismissed by this Court in its May 15, 2006, decision and Plaintiff

failed to appeal that dismissal to the Third Circuit.   In fact,

Defendants point out, the Court of Appeals did not address those

claims at all in its opinion.   Although Plaintiff has re-pled the

same claims in Counts I and II of the Amended Complaint,[8] the

doctrines of *res judicata*, collateral estoppel, and/or the law of

the case preclude this Court from reconsidering those claims and

they must, therefore, be dismissed.   (Defs.' Brief at 2-3.)   In

support of their argument that Plaintiff did not raise the Fourth

Amendment claims on appeal, Defendants provide a copy of

Plaintiff's appellant brief, which this Court may consider on a

_____

[8]   As in the initial Complaint, Plaintiff alleges that as "a
direct and proximate result of willful disregard, intentional, grossly
reckless and deliberately indifferent actions and/or failure to act"
by Northwest, Nussbaum, Tush, and Craig, "Phillips was unreasonably
seized in violation of [his] rights under the Fourth Amendment of the
United States Constitution."   (Am. Compl., ¶¶ 42, 48; 52, 57.)   In our
earlier opinion, we concluded Plaintiff's claims in this regard must
fail for two reasons.   First, a Fourth Amendment seizure occurs "only
when there is a governmental termination of freedom of movement
through means intentionally applied;" in this case, the only person
responsible for seizing Phillips "through means intentionally applied"
was Michalski.   Phillips, 2006 U.S. Dist. LEXIS 29399 at *10-*11,
*quoting* Brower v. County of Inyo, 489 U.S. 593, 597 (1989).   Second,
Plaintiff alleges now, as in the initial Complaint, that by the time
Michalski shot Phillips, he was no longer a Northwest employee, i.e.,
a government actor, because he had been fired earlier that morning.
(Am. Compl., ¶¶ 28-31.)   Having previously assumed for the sake of
argument that Fourth Amendment claims can rest upon events which
involve "government actors" who are not police officers, we concluded
this allegation barred Plaintiff's Fourth Amendment claim.

10

motion to dismiss as a matter of public record.[9] (Defendants'
Reply Brief, Docket No. 63 "Defs.' Reply," Exhibit A, "Plf.'s App.
Brief.")

Plaintiff responds that her appeal to the Third Circuit stated
she was contesting "entry of judgment in favor of all Defendants
and against Plaintiff" without limiting the appeal to any
particular civil rights claims. She concedes the Court of Appeals
did not mention the Fourth Amendment claims, but argues that the
Amended Complaint adequately sets forth a claim for violation of
the right to be free from unreasonable searches and seizures and
that she has adequately alleged *respondeat superior* liability on
the part of Northwest. (Plf.'s Brief at 15-16.[10])

---

[9] In deciding motions to dismiss, "courts generally consider
only the allegations contained in the complaint, exhibits attached to
the complaint and matters of public record." Pension Benefit Guar.
Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. Pa. 1993).
Motions, briefs and opinions filed in related litigation constitute
public records. Kuznetsov v. Nat'l City Bank, CA No. 06-551, 2007
U.S. Dist. LEXIS 2953, *4, n.2 (W.D. Pa. Jan. 16, 2007) (Ambrose,
C.J.), *citing* Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d
Cir. 2006).

[10] The Court is not persuaded by Plaintiff's argument that
Hammerstone v. Solebury Township, CA No. 94-4515, 1994 U.S. Dist.
LEXIS 15755 (E.D. Pa. Nov. 7, 1994), "supports a similar claim under a
Fourth Amendment as well as the Fourteenth Amendment analysis."
(Plf.'s Brief at 15.) Hammerstone's Fourth Amendment claim was based
on the unauthorized publication of his confidential driving record by
Daniel Boyle, a Solebury Township officer, purportedly for the purpose
of discrediting an award Hammerstone had received from the governor's
office. Hammerstone alleged that Boyle had illegally seized his
driving record in violation of state statutes and his Fourth Amendment
right to be free from unreasonable searches and seizures. Id. at *14.
Here, the Fourth Amendment claim is based not on the seizure, i.e.,
unauthorized use, of Phillips's confidential information maintained in
the Call Center databases, but on the seizure of Phillips's person.
(Am. Compl., ¶¶ 42, 48, 52, 57.) The claims regarding Northwest's

The affirmative defense of *res judicata* (claim preclusion) may be raised in a motion to dismiss. <u>Robinson v. Johnson</u>, 313 F.3d 128, 135, n.3 (3d Cir. 2002). In order to provide certainty to final judgments and to the entire legal system, this doctrine applies even if the prior decision was incorrectly decided. *See* <u>Federated Department Stores, Inc. v. Moitie</u>, 452 U.S. 394, 398 (1981); <u>Inofast Mfg. v. Bardsley</u>, 103 F. Supp.2d 847, 849 (E.D. Pa. 2000). To successfully argue that *res judicata* precludes reconsideration of the issue in question, the defendant must establish "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privities and (3) a subsequent suit based on the same cause of action." <u>Corestates Bank v. Huls America, Inc.</u>, 176 F.3d 187, 194 (3d Cir. 1999) (internal quotation omitted.)

There is no question that Plaintiff's Amended Complaint involves the same parties (with the exception of those Individual Defendants whom Plaintiff sued in the initial Complaint but whose dismissal was upheld on appeal) and that the Amended Complaint is based on the same cause of action. This Court previously dismissed Plaintiff's Fourth Amendment claims with prejudice, a decision which is considered to be a final judgment on the merits. <u>InterDigital Technology Corp. v. OKI Am., Inc.</u>, 866 F.Supp. 212,

---

failure to protect Phillips's confidential information appear to be based on his Fourteenth Amendment Equal Protection rights. (Am. Compl., ¶¶ 45-47; 54-56.)

213 (E.D. Pa. 1994); Gambocz v. Yelencsics, 468 F.2d 837, 840 (3d Cir. 1972) ("Dismissal with prejudice constitutes an adjudication of the merits as fully and completely as if the order had been entered after trial.") Moreover, Plaintiff asserted before the Court of Appeals that it had jurisdiction pursuant to 28 U.S.C. § 1291, indicative of the fact that she considered this Court's decisions to be final. (Plf.'s App. Brief at 1; *see also* Phillips, 515 F.3d at 230, confirming this point.)

The law is well-established in this Circuit that where "an appellant fails to set forth a particular issue on appeal and present an argument in support of that issue in the opening brief, then the appellant normally has abandoned and waived that issue on appeal;" consequently, the Court of Appeals does not address it. United States v. Gonzalez, No. 06-3599, 2007 U.S. App. LEXIS 18214, *13, n.5 (3d Cir. July 31, 2007), *citing* Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993). As pointed out in Kost, under Federal Rule of Appellate Procedure 28(a)(3) and (5) and Third Circuit Local Appellate Rule 28.1(a), an appellant is required to set forth the issues raised on appeal and to present an argument in support of those issues in his opening brief. *See* Kost, id. (internal citations omitted), dismissing plaintiffs' arguments brought pursuant to 42 U.S.C. §§ 1985 and 1986 because they failed to identify those claims in their issue statement and provided no arguments or citations relevant to those sections in the remainder

13

of their brief.

The statement of issues in Plaintiff's appellant brief refers only to her equal protection and due process state-created danger claims. (Plf.'s App. Brief at 2.) The summary of the argument and the argument itself fail to allude, even in passing, to any seizure claims brought under the Fourth Amendment and were therefore waived on appeal. *See* Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 192 (3d Cir. Pa. 2005)(plaintiff's failure to identify or argue an issue in his opening brief constituted waiver of the argument and attempts to raise it in his reply brief would not be considered.)

We conclude Plaintiff failed to appeal the decision of this Court dismissing her Fourth Amendment claims with prejudice. Counts I and II of the Amended Complaint, to the extent they allege violation of Plaintiff's Fourth Amendment rights by Northwest, Nussbaum, Tush, and Craig, are therefore barred by *res judicata* and will be dismissed with prejudice. Consequently, we need not consider Plaintiff's argument that she has adequately alleged *respondeat superior* liability on the part of Northwest in the Amended Complaint insofar as it pertains to the claims based on the Fourth Amendment.

C.    The "State-Created Danger" Claims
       Against Nussbaum Must be Dismissed

Defendants' third argument is that the state-created danger claim against Nussbaum should be dismissed with prejudice for two reasons. First, although the Court of Appeals specifically

14

remanded the case to allow Plaintiff to supplement her pleadings in this regard, the Amended Complaint still fails to state a cognizable state-created danger claim. In particular, Plaintiff has failed to allege two of the required elements of such a claim, the "affirmative act" requirement and the "shocks the conscience" requirement. (Def.'s Brief at 4-7.) Alternatively, Nussbaum is entitled to qualified immunity with regard to any such claim. (Id. at 7-11.)

Plaintiff contends that in the Amended Complaint, she has sufficiently alleged affirmative acts by Nussbaum which resulted in a state-created danger and has also established that his actions shocked the conscience and/or were deliberately indifferent. Therefore, Count II of the Amended Complaint, as it pertains to Nussbaum, is adequately alleged and should not be dismissed. (Plf.'s Resp. at 4-8.)

As the Court of Appeals pointed out, the Due Process Clause of Fourteenth Amendment to the Constitution protects an individual's liberty interest in personal bodily integrity. At the same time, "the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." Phillips, 515 F.3d at 235, citing DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 195-196 (1989) (other internal citations omitted.) However, a plaintiff may pursue a due process claim under the state-created danger exception to that general rule.

15

In Bright v. Westmoreland County, 443 F.3d 276 (3d Cir. 2006), the Court clarified the four elements of a state-created danger claim:

(1) the harm ultimately caused was foreseeable and fairly direct;

(2) a state actor acted with a degree of culpability that shocks the conscience;

(3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and

(4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

Id. at 281 (internal citations and quotation marks omitted).

With regard to the fourth element, the Court recognized that while "the line between action and inaction may not always be clear," the "state-created danger theory is predicated upon the states' *affirmative* acts which work to the plaintiffs' detriments in terms of exposure to danger." Bright, 443 F.3d at 282 (internal citations and quotations omitted, emphasis in the original.)

In this case, we focus first on the requirement that the plaintiff must allege an affirmative action, as opposed to inaction or omission, on the part of the state actor. Phillips, 515 F.3d at 236 (the misuse of state authority must have been

16

"affirmatively exercised in some fashion.") One of the primary reasons the Court of Appeals remanded the case was "to permit Phillips an opportunity to amend her claims. . .against defendant Nussbaum to allege--if she can--an affirmative act by Nussbaum." Phillips, id. at 243.

Plaintiff states the following new allegations against Nussbaum[11] in the Amended Complaint:

- With regard to Michalski's suspension, "Nussbaum decided and determined to permit Michalski to return to his employment at the 911 center, granting him continued full access to all confidential data bases and continued full access to co-employees who could assist him in gaining further access to all confidential data bases. Nussbaum also made the affirmative decision that either no further investigation of the extent, victims, or purpose of Michalski's violations was necessary or determined to investigate them at a later date."
  (Am. Compl., ¶ 15; *cf.* initial Complaint, ¶ 19.)

- On October 19, 2003, when Nussbaum confronted Michalski about misuse of the databases, Michalski allegedly told him that other dispatchers were doing the same thing. "Nussbaum decided and determined to permit Michalski to return to his employment at the 911 center, granting him continued full access to all confidential data bases and continued full access to co-employees who could assist him in gaining further access to all confidential data bases. Nussbaum also made the affirmative decision that either no further investigation of Michalski's allegations was necessary or determined to investigate

---

[11]   As noted above, the Court of Appeals reinstated the state-created danger claims against Defendants Tush and Craig, concluding that Plaintiff had sufficiently alleged such claims in the initial Complaint. However, it also concluded it would be futile to remand for the purpose of allowing Plaintiff to amend her state-created danger claims against Ging, Zurcher and Cestra, because she could not allege foreseeability, nor had she sufficiently alleged affirmative action on their parts. Phillips, 515 F.3d at 239, 243. As noted above, Plaintiff has dropped all allegations against the last three Individual Defendants.

> them at a later date."
> (Am. Compl., ¶ 16; *cf.* initial Complaint, ¶ 20.)

• During the meeting on October 29, 2003, at which Michalski admitted he had continued to get information from the Call Center's databases even after he was put on suspension, "Nussbaum made the decision to terminate Michalski, realizing that the decision to terminate him, coupled with the information Michalski possessed from the 911 center, was likely to provoke and cause Michalski to harm individuals whose information he had improperly accessed."
   (Am. Compl., ¶ 31; *cf.* initial Complaint, ¶ 35.)

Plaintiff argues that these allegations cure the main deficiency identified by the Court of Appeals, i.e., the failure to allege an affirmative action or actions by Nussbaum. Accordingly, these allegations distinguish Nussbaum's actions from the conduct in cases such as Bright and DeShaney, *supra.*, where the state actors were guilty of pure omissions. (Plf.'s Brief at 6-7.)

Although we are inclined to agree with Defendants that the first two allegations are simply restatements of inaction or failure to act disguised as affirmative decisions not to take a particular action, we will presume, solely for the sake of analysis, that these allegations state affirmative actions.[12] In

---

[12] We find Plaintiff's new allegations comparable to statements made by the plaintiff's counsel in Bennett v. City of Philadelphia, CA Nos. 03-5685 and 05-0833, 2006 U.S. Dist. LEXIS 29988 (E.D. Pa. May 17, 2006). When asked to identify an affirmative act by a city social worker which created a danger for a child who was beaten to death, counsel argued that the social worker's decision not to act in accordance with established policies, procedures and state statutes, his decision not to go to the child's home, and his decision to lie about his failure to perform either of the first two acts satisfied the fourth element of the state-created danger test, i.e., that he had affirmatively used his authority in a way that created a danger to the child or that rendered her more vulnerable to danger than had he not

18

paragraphs 15 and 16, Plaintiff first alleges that Nussbaum affirmatively decided to allow Michalski to continue working for at least a week, despite knowing he would continue to have access to the databases and to co-employees who could assist him in his unauthorized use. The question is, therefore, did this decision create a danger to Phillips or render him more vulnerable to danger than if Nussbaum had not acted at all?

The answer must be no. Plaintiff alleges that between October 12 and October 19, 2003, Michalski had already run multiple searches of the Call Center networks and databases. (Am. Compl., ¶¶ 13-14.) She also alleges that he repeated his unauthorized searches of the databases on October 26, 2003, just before his suspension began, in an attempt to locate Phillips. (Id., ¶ 17.) One can infer that none of those searches was successful because Ferderbar did not call Nussbaum until the morning of October 29, 2003, to tell him Michalski had followed her to Phillips's home. From this allegation, it is logical to infer that the information Michalski received from Tush and Craig on October 28-29 (id., ¶¶ 19-22, 27), while he was on suspension, allowed him to do so. Nor is it logical to infer that Michalski's continued access to "co-employees who could assist him in his unauthorized use" during

---

acted at all. The court concluded these so-called "affirmative decisions" actually represented "inaction couched in terms of affirmative acts." While the social worker's inaction may have been incompetent and unconscionable, his failure to act did not give rise to a due process violation. Id. at *35-*36.

the period prior to his suspension increased the danger to Phillips; neither Tush nor Craig is alleged to have helped him during that period but only after he was already suspended. Thus, Plaintiff has not established that the decision to postpone Michalski's suspension created a new danger to Phillips or made him more vulnerable to harm. In short, had Nussbaum immediately suspended Michalski on October 19, 2003, the same tragic events could have occurred under the same circumstances, i.e., Tush and Craig providing Michalski with the unauthorized information while he was suspended.

Plaintiff also contends that Nussbaum made the affirmative decision not to investigate (or to delay investigation of) either Michalski's own unauthorized use of the Call Center databases or his claims that other dispatchers were doing the same thing. (Am. Compl., ¶¶ 15, 16.) Third Circuit precedent holds, however, that the mere failure to investigate, even when informed of potential danger, does not support a state-created danger claim. *See* D.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1376 (3d Cir. 1992), holding that failure by school authorities to investigate female students' claims of sexual molestation by fellow male students may have been indicative of "indefensible passivity" and nonfeasance, but did not rise to the level of a constitutional violation; *see also* Bright, 443 F.3d at 283-284 (delay by probation officers and other state officials in holding a probation

revocation hearing did not create a new danger or exacerbate a danger that already existed.) Moreover, while Plaintiff has alleged that generic "Defendants" knew Michalski was "distraught" over his breakup with Ferderbar and that this "distress" had caused him to access the Call Center databases for unauthorized purposes (Am. Compl., ¶¶ 23-24), Plaintiff has not alleged that on October 19, 2003, Nussbaum was aware that Phillips and Ferderbar were in any danger as a result of the unauthorized use by Michalski or that the comparable unauthorized use by other dispatchers had created any danger to other individuals. Thus, Nussbaum's decision not to investigate at that time must be considered even less egregious than that of the school officials in <u>Bright</u> who were well aware of potential danger to specific individuals.

Finally, Plaintiff alleges that on October 29, 2003, Nussbaum decided to terminate Michalski's employment even though he realized the decision was likely to "provoke [him] and cause Michalski to harm individuals whose information he had improperly accessed." (Am. Compl., ¶ 31.) We agree that firing Michalski was an affirmative act.[13] However, even if we accept Plaintiff's

---

[13] We note that Plaintiff had alleged Nussbaum's affirmative act of terminating Michalski's employment in the initial Complaint at ¶ 35. The Court of Appeals, however, appeared to find this allegation insufficient to satisfy the fourth prong of the state-created danger test. While it acknowledged this allegation (<u>Phillips</u>, 515 F.3d at 229), its detailed analysis of the fourth element concluded that no affirmative act had been satisfactorily alleged. <u>See</u> <u>id.</u>, at 235-236, concluding that the complaint did not allege an affirmative action rather than inaction or omission against Nussbaum.

speculation that Nussbaum "knew" that firing Michalski would provoke him, the analysis is not yet complete. We conclude that once again, Plaintiff has failed to show that this action itself created a danger to Phillips or rendered him more vulnerable to danger than if Nussbaum had not acted at all.

First, as noted above, before the meeting on October 29, 2003, Nussbaum learned from Ferderbar that Michalski had been able to track her down at Phillips's home. (Am. Compl., ¶ 27.) Thus, it is apparent from the face of the Amended Complaint that Michalski already knew how to locate Phillips; it cannot be said, therefore, that firing Michalski rendered Phillips *more* vulnerable than he was before the firing. Second, while it might be reasonable to suppose that Michalski would be sufficiently provoked with Ferderbar for calling Nussbaum or with Nussbaum for the firing itself that he would harm one of them, Phillips is not alleged to have had anything to do with Michalski's firing. That is, firing Michalski cannot be said to have created a new danger for Phillips because Michalski was already angry at Phillips for (presumably) playing some part in the breakup with Ferderbar. Third, other than the allegation that Defendants knew "at all relevant times" that Michalski was distraught over the breakup, the only allegations of concrete threats came *after* he was fired when Michalski called Tush and Craig, stating that "Ferderbar and Phillips were going to pay for putting him in his present situation." (Am. Compl. ¶ 36.)

That is, Plaintiff fails to allege any facts which would support the suggested inference that Nussbaum knew before he fired Michalski that doing so would escalate the potential harm to Phillips.[14] In short, nothing in the Amended Complaint indicates that the act of firing Michalski created a danger to Phillips which had not previously existed, nor that Phillips became more vulnerable to Michalski's eventual attack as a result of that firing. *See* Phillips, 515 F.3d at 235 (to establish a state-created danger claim, the state actor must have used his authority "to create an opportunity that otherwise would not have existed for the third-party's crime to occur"), *citing* Kneipp v. Tedder, 95 F.3d 1199, 1208 (3d Cir. 1996).

We conclude Plaintiff has again failed to allege facts with regard to Nussbaum which satisfy the requirement for affirmative acts which support the fourth prong of the state-created danger theory. We do not, therefore, address Defendants' alternative arguments that Plaintiff has failed to allege that Nussbaum acted with a degree of culpability that shocks the conscience or that he is entitled to qualified immunity. Defendants' motion is granted insofar as they seek dismissal of the state-created danger claims against Daniel Nussbaum.

---

[14] As an aside, we note there is no allegation that Nussbaum, in fact, ever learned of Michalski's statement that Phillips and Ferderbar "were going to pay" for Michalski's situation.

23

### D. Punitive Damages Claims Against Northwest Must be Dismissed

In Count I of the Amended Complaint, Plaintiff seeks punitive damages against Northwest, Allegheny County and Allegheny 911 pursuant to 42 U.S.C. § 1983. Defendants contend this demand as it applies to Northwest should be dismissed with prejudice because, under long standing precedent, a "hybrid entity with substantial connections to government" such as itself is immune from punitive damages, just as a municipality is immune. (Defs.' Brief at 11, *citing* Newport v. Fact Concerts, 453 U.S. 247, 271 (1981), and Bolden v. Southeastern PA Transp. Auth., 953 F.2d 807, 829-831 (3d Cir. 1991).) Because Plaintiff has alleged that Northwest is a corporation established "for the benefit of residents of the County of Allegheny" and that it was, at all relevant times, "a state actor. . .acting under the color of law," Plaintiff's prayer for punitive damages against it must be dismissed. (Defs.' Brief, id.)

While Plaintiff concedes it is well-established that municipalities are immune from punitive damages under Section 1983, she argues the law is less well-settled with regard to immunity for non-governmental entities such as Northwest. In particular, Plaintiff argues Defendants' motion is premature because the exact nature of the relationship between Allegheny County and Northwest is not apparent from the face of the Amended Complaint and can only be determined through extensive discovery. (Plf.'s Brief at 13-

24

15.)

In response, Defendants refer to public record materials filed in support of their motion to dismiss the initial Complaint, namely an ordinance of the Town of McCandless, an "intergovernmental cooperation agreement," and the Northwest bylaws. These documents, Defendants argue, confirm that Northwest was a non-profit corporation formed by several municipalities pursuant to the Intergovernmental Cooperation Act, 53 Pa.C.S. §§ 2301-2316. By extension, therefore, Northwest is a "local agency" as described in the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 *et seq.*, i.e., "a government unit. . .created by two or more municipalities." (Defs.' Reply at 10; *see also* Exhibit A to Docket No. 26.)

At this point in the litigation, we agree with Plaintiff that the structure of Northwest and its relationship to any recognized municipality or group of municipalities is not evident from the Amended Complaint. Nor is it clear from the documents provided by Defendants that the Town of McCandless and the other municipalities intended any governmental authority to be transferred to Northwest as a result of the cooperation agreement. For example, it is possible that the municipalities, pursuant to the cooperation agreement, simply contracted with Northwest to provide a service, comparable to a municipality hiring a private trash removal company rather than providing that service through its own employees.

Because it is unclear if Northwest is a quasi-governmental local agency and therefore immune from punitive damages to the same extent as a municipality, Defendants' motion to dismiss Plaintiff's prayer for such damages is denied without prejudice. Defendants may re-visit this issue at an appropriate time in the future.

An appropriate order follows.

William L. Standish

William L. Standish
United States District Judge

Date: June 24, 2008

26